**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

EDWARD M. VON DER SCHMIDT,
Aka Eddie von der Schmidt,
   ~ and ~

KEANNA NGÔ

                     Plaintiffs,


       -against-

MORGAN STANLEY,
MATTHEW HORNBACH, and
DENISE MCCOOL

                 Defendants.

Civil Action No.: 22-8198


**OPPOSITION TO MOTION**
**TO DISMISS**

---

**PLAINTIFF KEANNA NGÔ AND EDWARD M. VON DER SCHMIDT MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MORGAN STANLEY MATTHEW HORNBACH AND DENISE MCCOOL'S MOTION TO STAY THIS ACTION AND COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

---

Brief By:
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC.
1242 E. 80th Street, 3rd Floor
Brooklyn, NY 11236

## <u>PRELIMINARY STATEMENT</u>

As a matter of record, Plaintiff von der Schmidt is properly before this Court, which is a "court of competent jurisdiction" as mandated by paragraph 4 of the executed Arbitration Agreement.   (**Krentzman Decl., Ex. B (Arbitration Agreement[1]**)).   The contract terms are clear: "Any issue concerning the validity or enforceability of any of the class action, collective action, and representative action waivers contained in this Arbitration Agreement ("Waivers") shall be governed by and determined under and in accordance with the FAA and shall be decided by a ***court of competent jurisdiction***, and not by an arbitrator." (**Krentzman Decl., Ex. B (Arbitration Agreement)**).  Mr. von der Schmidt is before the Court contesting the validity and enforceability of the representative action waivers and to litigate causes entirely separate from his employment at Morgan Stanley and that followed his separation from the Firm.

It is Plaintiff's position that this Court has the sole jurisdiction to distinguish between employment-related matters and distinct causes that stem from Morgan Stanley's attempts to prevent public disclosure and gain an unfair advantage in litigation.  The terms of the agreement do not apply to the privacy and cyber-related causes enumerated in the pleading as they concern conduct related to the litigation itself that occurred after Mr. von der Schmidt had resigned.

Severability in the Arbitration Agreement is also unambiguous: "In the event any of the Waivers set forth in paragraph 4 above are determined to be invalid, unenforceable or void with respect to a particular Covered Claim, that Covered Claim and only that Covered Claim shall proceed in a court of competent jurisdiction and not in arbitration (and such court shall be the exclusive forum for such claim)."   (**Krentzman Decl., Ex. B (Arbitration Agreement)**).   It is the Plaintiffs argument that non-retaliation provisions cannot be treated severally, however. Employers, like Morgan Stanley, would otherwise be incentivized to retaliate if doing so had no possibility of voiding the agreement.   In the absence of repudiation or the involvement of the authorities, firms like Morgan Stanley can and will go as far as they want to ensure that a case never makes it to Court and that accounts of the Firm's and its agents' wrongdoing are silenced,

---

[1] To avoid inundating the Court with duplicative exhibits, Plaintiffs will cite to Defendants counsels declaration and exhibit as it pertains to the Arbitration Agreement.

even if there is a vested public interest in disclosure.  This represents a tremendous moral hazard that cannot become a precedent.  It implies that the contract is effectively not enforceable as Morgan Stanley will not honor its own contractual language.

Collectively, the terms of the Arbitration Agreement require that this Court consider each cause individually in determining the applicability of the waiver provisions, which Mr. von der Schmidt is contesting on account of the public interest, as well as the contract's failure to meet the basic criteria stipulated by the FAA.  On the latter point, only a paucity of employees opt-out of the Arbitration Agreement, and most of those depart the Firm within a year.  It is common knowledge that opting out of the Arbitration Agreement establishes an employee as a perceived litigation risk and makes them an immediate candidate for dismissal, effectively mandating that new employees sign the agreement as a precondition to full-time employment at the Firm. Moreover, Congress certainly did not intend for arbitration to be used as a vehicle to silence attempts to blow the whistle on systematic wrongdoing or block litigation for causes unrelated to work.  Morgan Stanley's documented manipulation of the regulatory framework is also a pertinent risk, given a unanimous panel ruling last September in favor of a former employee whom the Firm was found to have defamed by initiating a specious FINRA inquiry.  (https://www.bloomberg.com/news/articles/2022-09-28/morgan-stanley-s-reason-for-fx-trader-s-exit-found-defamatory).

As for the public's interest, Morgan Stanley condones discriminatory statements and accepts pay discrimination as a "market function."  In retaliation against those who would report misconduct and discrimination, a protected activity, the Firm exploits private medical information furnished by third-party leave providers.  Morgan Stanley will threaten individuals and pursue any means necessary to prevent employees from filing in open Court, including resorting to cyber exploitation and surveillance of unaffiliated parties who are decimated as collateral, as Morgan Stanley has done to Ms. Ngô.

Turning to Defendants' various contentions, we know that Morgan Stanley does not perceive Hornbach's comments presented to the Court as racist or prejudiced because they officially said so in Employee Relations and HR's recorded findings.  At the time, the Firm sought to contextualize written statements that should have spoken for themselves.  The very

motivation for their initial retaliatory actions and cyber harassment began with a motive to stifle any accounts of their position, knowing full well that many people do and should take offense. More troubling is the Firm's stance on systematically underpaying Asian employees, which their lead ISG attorney brushed aside as a "market function."   From this, we can infer Morgan Stanley's position that anything is permissible as long as it maintains the status quo, even if that means paying certain groups of individuals less for the same work.

The retaliation link is also unambiguous: on a recorded call, Employee Relations retorted, "What did you expect to happen?" when Mr. von der Schmidt asked how a conversation with a supervisor about a manager's behavior was so decidedly turned against him.  The Firm's external counsel admitted that the Firm retaliated in a recorded call with Mr. Blackburn in March 2022. Despite Morgan Stanley's public charade that is contradicted by its own admissions, several individuals named in the Complaint have since conspicuously left the Firm or had their responsibilities curtailed, suggesting Morgan Stanley is well aware of its own conduct violations and exposure.

Defendants ignore all evidence already presented to the Court to falsely assert that Ms. Ngô and Mr. von der Schmidt have not presented any and that their claims are "implausible." Defendants will invariably denigrate any facts showcasing the complexity of their actions as "difficult to follow" and "jargon-heavy," but this is merely an attempt to obfuscate.  The facts presented in the pleading require certain terminology to describe what took place in detail. Plaintiffs have not had the luxury of taking evidence preservation for granted, given the Defendants have demonstrated a penchant for tampering.

Morgan Stanley casts aside the facts and attachments presented in the pleading to gaslight the Court and falsely contend that Ms. Ngô and Mr. von der Schmidt "do not assert a single factual allegation plausibly suggesting that Defendants were involved."  This is a lie.  On the contrary, every statement in the pleading can be corroborated by **hard evidence**, which Morgan Stanley will receive in discovery.  While Defendants continue their harassment of Ms. Ngô by trivializing her trauma as "beyond implausible" and even "fantastical or absurd," **they do not offer a single specific denial** or address any of the concrete evidence already presented.  It is telling that Defendants claim no evidence has been provided of their wrongdoing as they move to

4

block early discovery that would further corroborate the Firm's involvement.  Morgan Stanley is simply seeking to distract the Court with the complexity of its own attacks.  This showcases further moral hazard, wherein a legal adversary could employ ever more sophisticated cyber intrusion strategies as they gamble that the burden of contesting such measures or simply explaining them to others would become too great.

Despite claiming that Plaintiffs "do not assert a single factual allegation," Morgan Stanley then inexplicably contends that the only cyber-related evidence provided to the Court was that Mr. von der Schmidt's work device was remotely wiped.  Again, this willfully ignores a litany of facts and attachments presented to the Court. These include documented social engineering attempts and photographic evidence of malicious process execution on a Morgan Stanley host computer identified explicitly and corroborated by Plaintiff's internet service provider (ISP) and a cybersecurity professional.  (**Ngo Decl., Ex.  A (Expert Report)**).  Morgan Stanley also ignores evidence of a payload implant on Ms. Ngô's personal laptop created in February 2022, external manipulation of an evidence folder on the same laptop on March 28, 2022, and the disappearance of important system logs on April 7, 2022.   Recently discovered artifacts on her personal iPhone raise the possibility that Ms. Ngô's privacy was compromised as early as July 31, 2021.

What Morgan Stanley did demonstrate by remotely wiping Mr. von der Schmidt's work phone immediately after his outreach to James Gorman was highlight that the Firm **is capable of remotely deleting files from a device** in 'Airplane Mode' that had cellular service disabled. This is exactly the level of capability that Plaintiffs are alleging and that Defendants brazenly paint as "implausible."  Remote administrative capacity may be unremarkable in a workplace setting, but personal computing equipment should not be enrolled in Mobile Device Management ("MDM") frameworks, which Plaintiffs phones and computers visibly are.  MDM may sound innocuous, but it means that a remote party has full control of the device and all of its embedded functionality.  This, of course, includes peripherals such as the camera and microphone.

Evidence of hidden communication between Ms. Ngô and Mr. von der Schmidt's devices and external servers (including named security vendors) includes a constellation of sockets.  One can enter the basic 'netstat' (or equivalent) command on virtually any consumer operating system

and see a list of network connections on the computer.  Plaintiffs can readily demonstrate connection points to remote servers on their personal laptops.  Plaintiffs also possess detailed IP logs for nearly all affected devices that would require limited discovery to determine beneficial ownership of the server endpoints.

The limited understanding of modern computing and adversarial tradecraft that Morgan Stanley has put forward through counsel belies the Firm's reputation as a technology innovator, its multi-billion-dollar operational commitments, and the parade of accomplished computer scientists and cyber-security professionals they have employed.  Characterizing allegations of unauthorized remote administration and deployment of phones, laptops, and other computing devices as far-fetched in the wake of the pandemic and work-from-home arrangements defies our present reality.  Amid daily headlines concerning generative Artificial Intelligence models, many might be surprised to learn that computational AI research began in earnest more than 60 years ago. Morgan Stanley's unserious treatment of the allegations and facts that Plaintiffs have presented is beneath this Court.

Furthermore, exploitation of personal computing and Internet-of-Things ("IoT") devices is rampant and no laughing matter.  In a jointly-penned Foreign Affairs article published in February, the Director of the Cybersecurity and Infrastructure Security Agency (CISA) cited "thousands" of known vulnerabilities in consumer software as she called for "a new model for cybersecurity […] in which we can place implicit trust in the security and integrity of the technology that we use every hour of every day.[2]"  Monthly security bulletins from the world's preeminent technology companies highlight a host of exploitations involving arbitrary remote code execution (i.e., the ability to freely manipulate another computer).

More troubling is that Morgan Stanley's duplicity ignores its own disclosed business operations and practices. The Firm recently established a world-class Cybersecurity Fusion Center.  The Firm also disclaims, "Morgan Stanley and third parties acting on its behalf reserve the right, to the extent permitted under applicable law, to retain and monitor all electronic communications."  In Plaintiffs' case, Morgan Stanley is only interested in securing evidence that

---

[2]  https://www.cisa.gov/news-events/news/readout-director-easterly-visits-carnegie-mellon-university-calls-radical-change-technology-product

incriminates them.  If they have made the determination that the surveillance conducted on Ms. Ngô and Mr. von der Schmidt is somehow defensible, they must disclose this information to the Court. Regardless, any unauthorized cyber activity must cease immediately.  To say nothing of potential criminality, such an advantage during active litigation clearly violates attorney-client privilege. Ms. Ngô and Mr. von der Schmidt once again request that the Court intervene to ensure the preservation of evidence and to safeguard the integrity and fairness of the proceedings.

## STATEMENT OF FACTS

Plaintiffs reiterate the facts outlined in their December 17, 2022, First Amended Pleading.

I.  **PLAINTIFF DOES NOT FAIL TO STATE A CLAIM FOR RELIEF THAT CAN BE GRANTED**:

a.  **Fed.  R. Civ. P. 12(b)(6) Standard**:

When reviewing a motion to dismiss the pleadings, courts "accept all factual allegations as true, construe the FAC in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the FAC, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Supreme Court clarified the Rule 12(b)(6) standard: the factual allegations outlined in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555.  As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... [a] claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his

claim.  The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citations omitted)).

In affirming that *Twombly*'s standards apply to all motions to dismiss, the Supreme Court explained several principles.  First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).  Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.   Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*  Ultimately, "a complaint must do more than allege the Plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  However, "a district court ruling on a motion to dismiss may not [*13]  consider matters extraneous to the pleadings . . . [although a] limited exception exists for documents that are integral to or explicitly relied upon in the FAC." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010) *cert. denied*, 132 S. Ct. 98, 181 L. Ed. 2d 26 (2011) (citation and internal quotation marks omitted).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *Id.* at 98.  That said, the Rule 8 pleading standard is applied "with the same level of rigor **in all civil actions**." *Id.* (quoting *Iqbal*, 556 U.S. at 684). *Cole v. NIBCO, Inc.*, No. 3:13-cv-07871 (FLW)(TJB), 2015 U.S. Dist. LEXIS 65960, at *10-13 (D.N.J. May 20, 2015).

Here, the Plaintiffs systemically followed the Rule 8 pleading standard.  Plaintiffs are not required to prove their case at the pleading stage.  If the Court believes the Plaintiffs have not pled enough facts to substantiate their claims, the Plaintiffs respectfully request leave to amend the pleadings so they can correct any inequities and add additional applicable causes of actions, facts, and defendants.

b.  **Plaintiff Pleads Sufficient Facts To Satisfy The Rule 8(A)(2) Pleading Standard**:

The standard of review to be applied by the Court in reviewing a Rule 12(b)(6) motion to dismiss was recently discussed by the United States Supreme Court in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009). The Court stated:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when Plaintiff pleads factual content that allows the Court to draw the reasonable inference that Defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*., at 555, 127 S.Ct. 1955 (Although for the purposes of a motion to dismiss, we must take all of the factual allegations in the Complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the Complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." *Kojancie v. Gabriel*, No. 09-104E, 2009 U.S. Dist. LEXIS 66924, at *15-17 (W.D. Pa. July 31, 2009).

Here, the Plaintiff's systemically followed the Rule 8 pleading standard.   Plaintiffs are not required to prove their case at the pleading stage.  If the Court believes the Plaintiffs have not pled enough facts to substantiate their claims, the Plaintiffs respectfully request leave to amend the pleadings so they can correct any inequities and add additional applicable causes of actions, facts, and defendants.

c.  **For Counts III, VII, and VIII, Plaintiff Pleads Sufficient Facts To Satisfy New Jerseys Notice Pleading Standard**:

New Jersey is a notice-pleading state, requiring only a general statement of the claim needs to be pleaded.  *Printing Mart v. Sharp Electronics Corp.*, 116 N.J. 739, 746, 563 A.2d 31 (1989).  Nevertheless, it is still necessary for the pleadings to include a statement of facts that will "fairly apprise the adverse party of the claims and issues to be raised at trial." *Jardine Estates, Inc. v. Koppel*, 24 N.J. 536, 542, 133 A.2d 1 (1957). On a motion to dismiss according to R. 4:6-2(e), the Court will accept the facts alleged in the Complaint as true.  *Craig v. Suburban Cablevision*, 140 N.J. 623, 625-26, 660 A.2d 505 (1995).

The test for determining the adequacy of the pleading is whether a cause of action is suggested by the facts. *Velantzas v. Colgate-Palmolive Corp.*, 109 N.J. 189, 536 A.2d 237 (1998). The Court must search in-depth and with liberality to determine if a cause of action can be gleaned even from an obscure statement, mainly if further discovery is conducted.  *Printing Mart* at 772.  The New Jersey Supreme Court cautioned that a R. 4:6-2(e) motion "should be granted in only the rarest of instances." *Id.*; *see also Lieberman v. Port Authority of N.Y. & N.J.*, 132 N.J. 76, 79, 622 A.2d 1295 (1993).  Ordinarily, where a motion to dismiss under R. 4:6-2(e) is granted, it is done so without prejudice, with the Court having the discretion to permit Plaintiff to amend the Complaint to allege additional facts to state a cause of action.   *Hoffman v. Hampshire Labs, Inc.*, 405 N.J. Super. 105, 116, 963 A.2d 849 (App. Div. 2009).   Under appropriate circumstances, a trial court may dismiss a complaint with prejudice.   *Johnson v. Glassman*, 401 N.J. Super. 513, 524 (App. Div. 2010).  Additionally, the Court may dismiss a count or counts of the Complaint according to a R. 4:6-2(e) motion instead of dismissing the entire Complaint.  *Jenkins v. Region Nine Housing*, 306 N.J. Super. 258, 703 A.2d 664 (App.

Div. 1997), *cert. denied* 153 N.J. 405, 709 A.2d 798 (1998). *Doe v. Law Office of Conrad J. Benedetto*, 2019 N.J. Super. Unpub. LEXIS 1033, *8-9.

Here, Plaintiff's systemically followed the New Jersey notice pleading standard. Plaintiffs are not required to prove their case at the pleading stage in the State of New Jersey. If the Court believes the Plaintiffs have not pled enough facts to substantiate their claims, the Plaintiffs respectfully request leave to amend the pleadings so they can correct any inequities and add additional applicable causes of actions, facts, and defendants.

d. **For Counts III, VII, and VIII, Plaintiff Pleads Sufficient Facts To Satisfy New York's Notice Pleading Standard**:

According to CPLR 3013, the allegations of a complaint need not be outlined in detail; it is sufficient if the parties are put on notice of the underlying transactions or occurrences, and the material elements of the cause of action are stated." See CPLR 3013. It is well settled, that a claim is stated under New York's pleading standard when "the statements in the pleading, viewed with reason and liberality, are 'sufficiently particular' to give defendants notice of the plaintiffs' claims . . . and of the elements of plaintiffs' alleged cause of action." *See, Elson v. Elson,* 149 AD2d 141, 144, 545 NYS2d 31 (2d Dep't. 1989). *Wade Bishop v. Combe & Combe Prods., Inc*., Defendants, No. 520600/2019, 2020 N.Y. Misc. LEXIS 17948, at *6-7 (Sup. Ct. May 4, 2020).

Here, Plaintiff's systemically followed New York's notice pleading standard. Plaintiffs are not required to prove their case at the pleading stage in the State of New York. If the Court believes the Plaintiffs have not pled enough facts to substantiate their claims, the Plaintiffs respectfully request leave to amend the pleadings so they can correct any inequities and add additional applicable causes of actions, facts, and defendants.

II. **THE COURT SHOULD NOT DISMISS PLAINTIFF'S REMAINING CLAIMS**:
a. *MS. NGÔ STATES A CLAIM UNDER THE CFAA*:

Courts in this Circuit have generally found that CFAA claims are subject to the notice pleading standard under Federal Rule of Civil Procedure 8(a). *See Dedalus Found. v. Banach*, No. 09 Civ. 2842, 2009 U.S. Dist. LEXIS 98606, 2009 WL 3398595, at *4 (S.D.N.Y. October 16, 2009); *Feldman v. Comp Trading, LLC*, No. 19 Civ. 4452, 2021 U.S. Dist. LEXIS 45654, 2021 WL 930222, at *3 (E.D.N.Y. March 11, 2021). Some courts across the country have

held that Section 1030(a)(4) claims are subject to Rule 9(b).   *See Synopsys, Inc. v. Ubiquiti Networks, Inc.,* 313 F. Supp.  3d 1056, 1072 (N.D. Cal. 2018) (applying Rule 9(b) to 1030(a)(4) claim); *Motorola‚ Inc. v. Lemko Corp.,* 609 F. Supp.  2d 760, 765 (N.D. Ill. 2009).  However, the weight of court opinion suggests that Rule 9(b) does not apply to Section 1030(a)(4) because "intent to defraud" is best understood as requiring wrongdoing but not the elements of common law fraud.  *See Sprint Nextel Corp. v. Simple Cell, Inc.*, No. 13 Civ. 617, 2013 U.S. Dist. LEXIS 99580, 2013 WL 3776933, at *6 (D. Md. July 17, 2013) (collecting cases); *T-Mobile USA, Inc. v. Terry*, 862 F. Supp.  2d 1121, 1130 (W.D. Wash. 2012) ("'Intent to defraud' under Section 1030(a) (4) simply means wrongdoing whereby the Defendant participated in dishonest methods to obtain the Plaintiff's secret information." (Citation and quotation marks omitted)).   The Court agrees with the weight of the cases and applies Rule 8(a) to El Omari's Section 1030(a)(4) claim. *El Omari v. Buchanan*, 2021 U.S. Dist. LEXIS 236933, at *36-37 (S.D.N.Y. Dec. 10, 2021).

Here, Defendant expects Plaintiff Ngô to prove her case in the pleadings.  That is not the standard for this district, this state, or the CFAA.  Pages 29 to 40 and attachments 1 to 22, all embedded in the pleadings, provide the defendants with more than enough facts to place them on notice of Plaintiff Ngô's CFAA claims.  In further support of the Plaintiff's cyber-attack claims, the Plaintiffs have secured the services of an independent cybersecurity expert who corroborated their claims and provided the Court with a detailed analysis of methods by which Defendants accessed, altered, and attacked Plaintiff's personal electronic devices.   (**Ngo Decl., Ex.   A (Expert Report)**).

As for the Defendants' confusing assertion that damages have not been claimed, their compromising the functionality of expensive technology to the point that Ms. Ngô cannot effectively use the creative programs she needs precludes her from gainful employment in her profession.   Unless Morgan Stanley and its agents remove the malware (commercial or otherwise) that they have installed on devices purchased in New Jersey and elsewhere, there is almost no prospect of remediation.  Both Plaintiffs have already incurred the cost of replacing damaged computing equipment, including phones, laptops, and desktops, and both will need to do so again in order to earn a living.  Plaintiffs respectfully request leave to amend to provide the

Court with a detailed itemized list of these damages if the Court believes that Plaintiffs are required to plead their damages with more specificity.

b. _THE PLAINTIFFS STATE A CLAIM UNDER THE NJCROA_:

In a claim under the computer-Related Offenses Act ("CROA"), a defendant is liable for "purposeful[ly] and knowing[ly]" removing or destroying computer data without authorization. See N.J.S.A. 2A:38A-1, et seq. To recover under CROA, a plaintiff must show he was "damaged in business or property by the defendant's violation of the act." N.J. Stat. Ann. § 2A:38A-3. We have said that a plaintiff must demonstrate damages under CROA to sustain a claim. _In Re Nickelodeon Consumer Privacy Litig._, 827 F.3d 262, 278 (3d Cir. 2016). Expert fees paid in furtherance of litigation are considered litigation costs rather than damages. _See Kowaleski v. Allstate Ins. Co._, 238 N.J. Super. 210, 569 A.2d 815, 819 n.4 (N.J. Super. Ct. App. Div. 1990). _Lexpath Techs. Holdings, Inc. v. Welch_, 744 F. App'x 74, 82 (3d Cir. 2018).

Defendants claim that Plaintiff's Complaint does not meet the intent requirements of the CFAA and CROA because the Complaint does not allege intent with sufficient particularity. However, intent to defraud under the CFAA and CROA is not subject to the heightened pleading standards of Rule 9(b) but instead is subject to the notice pleadings requirements of Rule 8 (a) (2). _Sealord Holdings, Inc. v. Radler_, No. 11-6215, 2012 U.S. Dist. LEXIS 29878, 2012 WL 707075, at *6 (E.D. Penn. March 6, 2012). _PNY Techs., Inc. v. Salhi, Civil Action No._ 2:12-cv-04916 (DMC)(JAD), 2013 U.S. Dist. LEXIS 110877, at *16 (D.N.J. August 5, 2013).

Here, again, Defendant expects the Plaintiffs to prove their case in the pleadings. That is not the standard for this district, the state of New York, the state of New Jersey, or the NJCROA. Pages 29 to 40 and attachments 1 to 22, all embedded in the pleadings, provide the defendants with more than enough facts to place them on notice of the Plaintiff's NJCROA claims. As stated throughout this opposition, in further support of the Plaintiff's cyber-attack claims, the Plaintiffs have secured the services of an independent cybersecurity expert who corroborated their claims and provided the Court with a detailed analysis of methods by which Defendants accessed, altered, and attacked Plaintiff's personal electronic devices. (**Ngo Decl., Ex. A (Expert Report)**).

If the Court believes the Plaintiffs have not pled enough facts to substantiate their claims, the Plaintiffs respectfully request leave to amend the pleadings so they can correct any inequities and add additional applicable causes of actions, facts, and defendants.

c. _THE PLAINTIFFS STATE A CLAIM FOR "INVASION OF PRIVACY" UNDER THE NEW JERSEY COMMON LAW_:

"New Jersey recognizes four related invasion of privacy torts: (1) unreasonable intrusion upon seclusion; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to one's private life; and (4) false light invasion of privacy." _Jevic v. Coca Cola Bottling, Co. of New York, Inc._, Civ. No. 89-4431, 1990 U.S. Dist. LEXIS 8821, 1990 WL 109851, at *8 (D.N.J. June 6, 1990).  Plaintiff appears to raise claims for both unreasonable intrusion upon seclusion and false light.

New Jersey courts have "long recognized" that the right to privacy includes claims for "intrusion upon seclusion." _Poltrock v. N.J. Auto. Accounts Mgmt. Co., Inc._, Civ. No. 08-1999, 2008 U.S. Dist. LEXIS 103351, 2008 WL 5416396, at*4 (D.N.J. December 22, 2008); _see also N.O.C., Inc. v. Schaefer_, 197 N.J. Super. 249, 484 A.2d 729, 731 (N.J. Super. Ct. Law. Div. 1984) (noting that "the right of privacy encompasses the right to be protected from a wrongful intrusion which would outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities").  "At the crux of an intrusion claim must be an allegation that a plaintiff's personal and private affairs have been pried into by the defendant," and "liability attaches the moment a plaintiff's privacy has been breached, whether it be physical or otherwise." _Poltrock_, 2008 U.S. Dist. LEXIS 103351, 2008 WL 5416396 at *5.

The alleged intrusion must be "highly offensive to a reasonable person," and "[n]ot withstanding a plaintiff's subjective expectations of privacy, a court must determine whether objectively, given the facts and circumstances of the particular case, a person would reasonably believe he has an expectation of privacy." _Id._ (internal citations omitted).  Even where a plaintiff demonstrates a privacy interest in a given area or item, "a court must weigh the competing interests of the parties to determine whether the defendant's reasons for its intrusion outweigh the plaintiff's right to privacy." _Id._  "'Where a defendant's action is properly authorized or justified by circumstance, it may be found reasonable and nonactionable even though it amounts to a slight invasion of the plaintiff's privacy.'" _N.O.C._, 484 A.2d at 734 (internal citation omitted).  _Conserve_

*v. City of Orange Twp.*, No. 21-872 (SDW)(ESK), 2021 U.S. Dist. LEXIS 148713, at *12-13 (D.N.J. August 9, 2021).

Here, Defendants assert that Plaintiffs failed to "plausibly" allege that any of the defendants intruded upon their personal devices; nothing could be further from the truth.  Pages 29 to 40 and attachments 1 to 22, all embedded in the pleadings, provide the defendants with more than enough facts to place them on notice of Plaintiff's intrusion upon seclusion claims into Plaintiff's devices.   In further support of the Plaintiff's claims, the Plaintiffs have secured the services of an independent cybersecurity expert who corroborated their claims and provided the Court with a detailed analysis of methods by which Defendants accessed, altered, and attacked Plaintiff's personal electronic devices.  (**Ngo Decl., Ex.  A (Expert Report)**).

If the Court believes the Plaintiffs have not pled enough facts to substantiate their claims, the Plaintiffs respectfully request leave to amend the pleadings so they can correct any inequities and add additional applicable causes of actions, facts, and defendants.

III.   **THE COURT SHOULD NOT STAY THIS ACTION DURING THE PENDENCY OF THE ARBITRATION**:

Firstly, on or about March 20, 2023, Plaintiff von der Schmidt voluntarily dismissed without prejudice all of his employment claims that Defendants deemed arbitrable, therefore, the question of the Court having to compel arbitration is moot.  Considering Mr. LeFevre's voluntary dismissals of the Town of Southold and the Individual Defendants, both motions to dismiss are now moot. *See Guigliano*, 396 F. Supp. 2d at 225 (holding that the Defendant's motion to dismiss is moot since the Court has accepted the Plaintiff's voluntary dismissal of that Defendant); *Thompson v. Ocwen Fin.  Corp.*, No 3:16-cv-01606 (JAM), 2018 U.S. Dist. LEXIS 10129, 2018 WL 513720, at *13 (D. Conn. January 23, 2018) (holding that the Defendant's motion to dismiss was moot after defendants had been voluntarily removed from the claim); *Goodman v. Bremby*, No. 3:16-cv-00665 (MPS), 2017 U.S. Dist. LEXIS 152498, 2017 WL 4169427, at *13 (D. Conn. September 20, 2017) (stating a defendant's motion to dismiss was moot because the Plaintiff had voluntarily dismissed that Defendant from the claim); *see also Williams v. Cmty. Solutions, Inc.*, 932 F. Supp.  2d 323, 327 (D. Conn. 2013) (noting that the voluntary dismissal of a defendant

"render[s] the motion to dismiss moot").   *LeFevre v. Fishers Island Ferry Dist.*, No. 3:17-cv-01065 (VAB), 2018 U.S. Dist. LEXIS 101307, at *6-7 (D. Conn. June 18, 2018).

As it pertains to the Defendants' motion to stay Plaintiff's remaining non-arbitrable causes of action, it is Plaintiff's position that staying, in this case, is unduly prejudicial and harmful to the Plaintiffs.   "The decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 856 (2d Cir. 1987) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 20 n.23); *see also White v. Cantor Fitzgerald, L.P.*, 393 F. App'x 804, 808 (2d Cir. 2010) (summary order) ("[T]he district court is not required to stay the litigation of the nonarbitrable claims before it on remand pending the outcome of any arbitrated claims." (Collecting cases)).

Judge Woods has aptly summarized the law in this area:

> The Court must balance several factors, in its discretion, in deciding whether to grant a stay of non-arbitrable claims.   "The Court must consider factors such as the desirability of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution." *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 110 (S.D.N.Y. 2017) (quotation omitted).   "A discretionary stay is particularly appropriate where there is significant factual overlap between the remaining claims and the arbitrated claims." Id. at 110-11 (quotation omitted); *see also Moore v. Interacciones Glob., Inc.*, No. 94-CV-4789 (RWS), 1995 U.S. Dist. LEXIS 971, 1995 WL 33650, at *7 (S.D.N.Y. January 27, 1995) ("It is well-settled that claims are appropriately stayed when they involve common issues of fact and law with those subject to arbitration or when the arbitration is likely to dispose of issues common to claims against both arbitrating and non-arbitrating defendants." (citations omitted)).   Similarly, "[b]road stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the non-arbitrable claims are of questionable merit." *Genesco*, 815 F.2d at 856 (citations omitted).
>
> The Court should also consider whether the issues decided in the arbitration are "likely to have preclusive effect over some or all of the claims not subject to arbitration." Katsoris, 237 F. Supp. 3d at 111 (quotation omitted); *see also CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 846 F.3d 35, 55 (2d Cir. 2017) ("It is settled law that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration." (citation omitted)).   And "a court should bear in mind that if the nonarbitrable claims are stayed pending arbitration of a [claimant's] other claims, then the [claimant] may wait 'months, if not years, before [her] nonarbitrable claims will be heard by a federal court.'" *Klein v. ATP*

*Flight Sch., LLP*, No. 14-CV-1522 (JFB) (GRB), 2014 U.S. Dist. LEXIS 91102, 2014 WL 3013294, at *11 (E.D.N.Y. July 3, 2014) (quoting *Chang v. Lin*, 824 F.2d 219, 222 (2d Cir. 1987)).

*Morelli v. Alters*, 2020 U.S. Dist. LEXIS 82048, 2020 WL 2306445, at *4 (S.D.N.Y. May 8, 2020); *accord Chang v. United Healthcare*, 2020 U.S. Dist. LEXIS 40457, 2020 WL 1140701, at *5 (S.D.N.Y. Mar. 9, 2020); *Katsoris*, 237 F. Supp. 3d at 110.

　　　None of these considerations counsel in favor of a stay.  The cyber claims have no factual overlap with Mr. von der Schmidt's ADA Disability, ADA Retaliation, Constructive Discharge, NYCHRL, NYSHRL, IIED, or Negligent Hiring, Retention claims.  Thus, there is no suggestion that the proceedings in arbitration would duplicate the proceedings that would remain in this Court.  Also, because there is no factual overlap, there is no chance that any issue decided in arbitration would have a preclusive effect on the cyber claims.  There is thus no reason to delay the adjudication of the Plaintiff's cyber claims.  *Gateguard, Inc. v. Goldenberg*, 585 F. Supp. 3d 391, 403-04 (S.D.N.Y. 2022).

　　　Finally, this Court would not be bound by any of the arbitrator's rulings.  The scope of the arbitration would be narrow, focusing only on Plaintiff von der Schmidt's employment claims.  Therefore, the arbitrator's decision — which may not even include a written opinion — is not likely to be particularly instructive with regard to any of Plaintiff's cyber-related claims.

　　　Additionally, staying Plaintiff Ngô's nonarbitrable claims would inflict undue prejudice on her.  The Second Circuit has held that "delay generally works to the advantage of defendants who may well be inclined to prolong the arbitration unnecessarily in the hope that plaintiffs ultimately will be forced to abandon their nonarbitrable claims.  If nonarbitrable federal claims are stayed pending the arbitration of other federal or state claims, plaintiffs . . . face the unhappy choice of either forgoing arbitrable claims in order to obtain prompt consideration of the other claims or waiting months, if not years, before their nonarbitrable claims will be heard by a federal court." *Chang v. Lin*, 824 F.2d 219, 222 (2d Cir. 1987) (declining to grant stay pending arbitration in a federal securities action).

　　　These concerns are equally applicable here.   Plaintiff Ngô (a non-Morgan Stanley employee) should not be prevented from moving forward with those claims that she stands ready

to litigate.  Therefore, Plaintiff respectfully requests the Court to deny Defendant's request for a stay of Plaintiff's nonarbitrable claims.  *Senisi v. John Wiley & Sons, Inc*., No. 13CV3314-LTS-AJP, 2015 U.S. Dist. LEXIS 6827, at *17-19 (S.D.N.Y. January 21, 2015).

IV.   **LEAVE TO AMEND:**

**_Leave_ to _Amend_ Shall be Freely Given**, according to *Federal Rule of Civil Procedure 15(a)*, Plaintiffs should be permitted leave to amend their Complaint.  *Federal Rule of Civil Procedure 15(a)* provides:

> A party may amend the party's pleading once, as a matter of course, at any time before a responsive pleading is served… Otherwise, a party may amend the party's pleading only by leave of Court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

*Fed.  R. Civ. P. 15(a)*.  This and the other Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.  *Willard Dairy Corporation v. National Products Corporation*, 373 U.S. 934, 935, 83 S.Ct. 1534, 10 L.Ed.2d 691 (1963) (citing *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).  In considering a motion for leave to amend, the Court should examine the underlying facts and whether the Plaintiff should be permitted to test claims on the merits rather than the technical requirements of pleading.  *In re ML-Lee Acquisition Fund II, L.P., and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. Securities Litigation*, 848 F.Supp. 527, 567 (D. Del. 1994) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Plaintiff seeks to leave to amend their Complaint to supplement the remaining viable causes of action against Defendants with additional facts and to add related causes of action to this case.  Plaintiff is not acting in bad faith, with a dilatory motive, or delay.  See *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993); also, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Foman v. Davis*, 371 U.S. at 182; *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F.Supp.2d 484, 487 (D. Del. 2003).  On the contrary, Plaintiff is acting in good faith to place detailed facts on the record and to ensure that every cause of action that can be brought is raised.  Nor are the amendments futile.  Plaintiffs believe the proposed amended Complaint

would survive a challenge under Rule 12(b)(6) and Rule 9.  See, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434.  The plaintiffs seek to amend their Complaint to clarify legal allegations and add facts, providing further detail and notice of the claims supporting their case.

Granting leave to amend the Complaint will not substantially delay this action.  This motion is being filed early in this case.  Furthermore, this is the Plaintiffs' second request for leave to amend; there has been no repeated failure to cure any deficiency.  The proposed amended Complaint sets forth more specific and particular facts for the remaining causes of action, and it will incorporate the assessment completed by an independent cybersecurity expert.  For these reasons, the proposed amended Complaint satisfies *Fed.  R. Civ. 15(a)*.

As previously stated, if the Court believes the Plaintiffs have not pled enough facts to substantiate their claims, the Plaintiff respectfully requests leave to amend the pleadings so they can correct any inequities and add additional applicable causes of actions.

A.  **Plaintiff's Amendments Should Relate to September 26, 2022.**
*Federal Rule of Civil Procedure 15(c)* provides:

An amendment of a pleading relates to the date of the original pleading when:

1) Relation back is permitted by the law that provides the statute of limitations applicable to the action, or
2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be outlined in the original pleadings, or
3) the amendment changes the party or the naming of the party against whom a claim is asserted if the preceding provision (2) is satisfied and,   within the period provided by 4(m) for service of the summons and Complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

*Fed.  R. Civ. P. 15(c)*.

As set out more fully below, the Plaintiffs satisfy the requirements of *Rules 15(c)(1), (c) (2), and (c)(3)*.  As a result, the proposed amended Complaint should relate to the date the Complaint was filed: September 26, 2022.  Plaintiffs seek to amend the Complaint before any applicable statute of limitations expires.  For that reason, the proposed amendments satisfy *Fed. R. Civ. P. 15(c)(1)*.  Second, the claims for the proposed amended Complaint are identical to those outlined in the Complaint, with a few additions.

V.   **CONCLUSION**:

The Plaintiffs requests that the Court denies Defendant's motion to dismiss for failure to state a claim.   If the Court is inclined to grant the Defendant's motion to dismiss because the Court believes the Plaintiffs have not pleaded adequately to meet the FRCP's Rule 8, the New York State and the New Jersey State notice pleading, standards, Plaintiff's requests leave to replead with more specificity.


**Date**: January 20, 2023

**Location**: Brooklyn, New York


Respectfully Submitted,

*Tyrone A. Blackburn, Esq.*
Tyrone A. Blackburn, Esq.
T. A. Blackburn Law, PLLC.
1242 East 80th Street, 3rd Floor
Brooklyn, NY 11236