-i-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD M. VON DER SCHMIDT AND KEANNA NGÔ,<br><br>Plaintiffs,<br><br>v.<br><br>MORGAN STANLEY, MATTHEW HORNBACH, AND DENISE MCCOOL,<br><br>Defendants. | Case No. 22-cv-8198-KPF<br><br>**Oral Argument Requested** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION OF PLAINTIFF VON DER SCHMIDT'S CLAIMS AND DISMISS PLAINTIFF NGÔ'S CLAIMS ASSERTED IN THE AMENDED COMPLAINT**

Dated: April 5, 2023

**MORGAN, LEWIS & BOCKIUS LLP**

Ira G. Rosenstein
Michael F. Fleming
Gregory B. Nelson
101 Park Avenue
New York, New York 10178
Tel: (212) 309-6000
Fax: (212) 309-6001
ira.rosenstein@morganlewis.com
michael.fleming@morganlewis.com
gregory.nelson@morganlewis.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.    VON DER SCHMIDT FAILS TO IDENTIFY GROUNDS TO AVOID ENFORCEMENT OF THE ARBITRATION AGREEMENT. ........................................ 2

II.   PLAINTIFFS CANNOT AMEND THEIR COMPLAINT THROUGH THEIR OPPOSITION TO DEFENDANTS' MOTION. ............................................................ 4

III.  NGÔ'S CLAIMS FAIL AS A MATTER OF LAW AND SHOULD BE DIMISSED. ..................................................................................................................... 5

    A.   NGÔ'S CLAIMS FAIL BECAUSE SHE HAS NOT PLAUSIBLY PLEAD THAT DEFENDANTS ENGAGED IN THE ALLEGED HACKING. ................................................................................................. 6

    B.   NGÔ'S CLAIMS ALSO FAIL BECAUSE SHE HAS NOT PLAUSIBLY PLEAD THAT SHE SUFFERED COGNIZABLE DAMAGES. ........................ 11

IV.  THE COURT SHOULD NOT PERMIT PLAINTIFFS LEAVE TO FURTHER AMEND THEIR COMPLAINT. ................................................................................. 12

V.   ANY REMAINING CLAIMS SHOULD BE STAYED DURING THE PENDENCY OF VON DER SCHMIDT'S ARBITRATION. ...................................... 14

CONCLUSION ............................................................................................................................ 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alemac Ins. Serv, Inc. v. Risk Transfer, Inc.*,
  No. 03-1162, 2003 WL 22024070 (S.D.N.Y. Aug. 28, 2003)..................................................14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................6, 11

*Baldwin v. United States*,
  No. 20-214, 2021 WL 431145 (N.D.N.Y. Feb. 8, 2021)............................................................4

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................................6

*Bose v. Interclick, Inc.*,
  No. 10-9183, 2011 WL 4343517 (S.D.N.Y. Aug. 17, 2011).....................................................12

*Bramshill Invs., LLC v. Pullen*,
  No. 19-18288, 2020 WL 4581827 (D.N.J. Aug. 10, 2020) ..................................................6, 12

*Broidy v. Glob. Risk Advisors LLC*,
  No. 19-11861, 2021 WL 1225949 (S.D.N.Y. Mar. 31, 2021)...................................8, 9, 10, 11

*Cummins, Inc. v. N.Y. Life Ins.*,
  No. 10-9252, 2012 WL 3870308 (S.D.N.Y. Sept. 6, 2012) ......................................................13

*Danisco A/S v. Novo Nordisk A/S*,
  No. 01- 10557, 2003 WL 282391 (S.D.N.Y. Feb. 10, 2003)....................................................15

*Dental Recycling N. Am., Inc. v. Stoma Ventures, LLC*,
  No. 21-9147, 2023 WL 373143 (S.D.N.Y. Jan. 24, 2023) .........................................................2

*Donjon Marine Co., Inc. v. Water Quality Ins. Syndicate*,
  523 F. App'x 738 (2d Cir. 2013) ...............................................................................................15

*Doyle v. U.S. Dep't of Homeland Sec.*,
  331 F. Supp. 3d 27 (S.D.N.Y. 2018), *aff'd*, 959 F.3d 72 (2d Cir. 2020)..................................4

*El Omari v. Buchanan*,
  No. 20-2601, 2021 WL 5889341 (S.D.N.Y. Dec. 10, 2021), *aff'd*, No. 22-55-
  CV, 2022 WL 4454536 (2d Cir. Sept. 26, 2022)........................................................................6

*Fin. Acquisition Partners LP v. Blackwell*,
  440 F.3d 278 (5th Cir. 2006) .......................................................................................................5

*Fink v. Time Warner Cable*,
　No. 08-9628, 2009 WL 2207920 (S.D.N.Y. July 23, 2009) ..................................................... 12

*JBCHoldings NY, LLC v. Pakter*,
　931 F. Supp. 2d 514 (S.D.N.Y. 2013) ................................................................................. 8, 10

*Mu Sigma, Inc. v. Affine, Inc.*,
　No. 12-1323, 2013 WL 3772724 (D.N.J. July 17, 2013) ......................................................... 9

*In re Nickelodeon Consumer Priv. Litig.*,
　827 F.3d 262 (3d Cir. 2016) ...................................................................................................... 7

*Omari v. Ras Al Khaimah Free Trade Zone Auth.*,
　No. 16-3895, 2017 WL 3896399 (S.D.N.Y. Aug. 18, 2017), *aff'd sub nom. El
　Omari v. Kreab (USA) Inc.*, 735 F. App'x 30 (2d Cir. 2018), *cert. denied sub
　nom. El Omari v. Ras Al Khaimah Free Trade Zone Auth.*, 139 S. Ct. 1170
　(2019) ............................................................................................................................. 8, 9, 11

*Ong v. Chipotle Mexican Grill, Inc.*,
　294 F. Supp. 3d 199 (S.D.N.Y. 2018) ....................................................................................... 4

*Piscopo v. Pub. Serv. Elec. & Gas Co.*,
　No. 13-552, 2015 WL 3938925 (D.N.J. June 25, 2015), *aff'd*, 650 F. App'x
　106 (3d Cir. 2016) ................................................................................................................ 6, 7

*Ruotolo v. City of N.Y.*,
　No. 03-5045, 2006 WL 2372236 (S.D.N.Y. Aug. 16, 2006), *aff'd*, 514 F.3d
　184 (2d Cir. 2008) ................................................................................................................... 14

*Spencer Sav. Bank SLA v. McGrover*,
　No. A-1899-13T3, 2015 WL 966151 (N.J. Super. Ct. App. Div. Mar. 5, 2015) ..................... 12

*Sync Labs LLC v. Fusion Mfg.*,
　No. 11-3671, 2016 WL 2901665 (D.N.J. May 18, 2016) ......................................................... 8

*Tiburon Lockers, Inc. v. Fletcher*,
　No. 15-6970, 2016 WL 4487852 (D.N.J. Aug. 24, 2016) ........................................................ 7

*Van Buren v. United States*,
　141 S. Ct. 1648 (2021) ............................................................................................................ 11

*Wolk v. Kodak Imaging Network, Inc.*,
　840 F. Supp. 2d 724 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v.
　Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014) ......................................................... 13

*Wright v. Ernst & Young LLP*,
　152 F.3d 169 (2d Cir. 1998) ...................................................................................................... 4

Defendants, by and through their attorneys, respectfully submit this Reply Memorandum of Law in further support of their Motion to Compel Arbitration of von der Schmidt's claims and to dismiss Ngô's claims.[1]

**PRELIMINARY STATEMENT**

All of von der Schmidt's claims arose from or relate to his Morgan Stanley employment. They should be arbitrated because the applicable agreement applies to all claims "based on, arising out of, or which arose out of or in any way relate to [his] employment." Shortly before Plaintiffs filed their Memorandum of Law in Opposition to Defendants' Motion (Plaintiffs' "Opposition" (Dkt. No. 31)), von der Schmidt notified the Court that he was voluntarily dismissing what he deemed to be his "employment related claims" against all Defendants. As a result, the only remaining claims he asserts in this Action are state law claims against Morgan Stanley under the NJCROA and the New Jersey common law regarding privacy. Regardless of the label von der Schmidt affixes to these claims, there can be no question that they are "based on," "arose out of," and in some way "relate to" his former employment with Morgan Stanley. Indeed, as is confirmed by the declaration that von der Schmidt and Ngô improperly submitted with their Opposition, these claims are based upon Plaintiffs' purported belief that Morgan Stanley "hacked" into their personal devices because of acts that von der Schmidt allegedly engaged in during his employment. Accordingly, von der Schmidt's claims must be arbitrated pursuant to the plain terms of the agreement between him and Morgan Stanley. The Opposition offers no grounds upon which the Court could conclude otherwise.

---

[1] All abbreviations and defined terms herein are ascribed the same meaning as in the Memorandum of Law in Support of Defendants' Motion to Dismiss ("Opening Brief" (Dkt. No. 25)).

The Opposition similarly fails to provide any basis to permit Ngô to proceed on her meritless claims against Defendants. In support of these claims, Ngô improperly asks the Court to consider new allegations asserted in declarations and an "expert report" that Plaintiffs submitted with the Opposition. Defendants submit that this extrinsic material should not be considered when deciding whether Ngô's operative pleading states a claim. However, even if the Court were to do so, it is clear that these new allegations, even if properly pleaded, could not support Ngô's claims. Accordingly, as set forth further herein and in Defendants' Opening Brief, the Court should dismiss Ngô's claims in their entirety.

## ARGUMENT

**I.   VON DER SCHMIDT FAILS TO IDENTIFY GROUNDS TO AVOID ENFORCEMENT OF THE ARBITRATION AGREEMENT.**

Von der Schmidt already has conceded that he is subject to a binding arbitration agreement with Morgan Stanley that applies to "any and all claims or disputes between [himself] and Morgan Stanley or any of its current . . . employees . . . based on, arising out of, or which arose out of or in any way relate to [his] employment." (*See* Am. Compl. ¶¶ 12, 15; Krentzman Decl., Ex. B § 2.) After voluntarily dismissing the claims he deems "employment related" (*see* Notice Of Voluntary Dismissal, Dkt. No. 33), von der Schmidt continues to assert a series of baseless arguments regarding the Arbitration Agreement. These arguments are without legal or factual merit and are supported by no citations to legal authority. Moreover, as Defendants explained in their Opening Brief, many courts have heard and dismissed similar challenges to Morgan Stanley's CARE Arbitration Agreement. (*See* Opening Br. at 10-11). Von der Schmidt makes absolutely no attempt to address the weight of authority supporting Defendants' motion to compel, and the motion could be granted on that ground alone. *See Dental Recycling N. Am., Inc. v. Stoma Ventures, LLC*, No. 21-9147, 2023 WL 373143, at *3 (S.D.N.Y. Jan. 24, 2023) (Failla, J.) ("The

Second Circuit has long held that when a party fails adequately to present arguments in a brief, a court may properly consider those arguments abandoned." (alteration marks and citations omitted)).[2]

There also is no merit to von der Schmidt's contention that his two remaining claims in this Action – invasion of privacy under New Jersey common law and the NJCROA claim – are not arbitrable.[3] Plaintiffs' Amended Complaint, Opposition, and declarations all confirm that it is von der Schmidt's belief that Morgan Stanley has invaded his common-law New Jersey right to privacy and committed a "computer related offense," as defined by New Jersey law, because of actions he allegedly took during the course of his employment with Morgan Stanley. (*See, e.g.*, Am. Compl. ¶¶ 18, 178-179, 254-271; Opp'n at 3-7; Declaration of Edward M. von der Schmidt ("von der Schmidt Declaration" (Dkt. No. 31)) ¶¶ 5-17.) These claims (which Defendants dispute in their entirety) unquestionably are "based on . . . arose out of or in any way relate to" von der Schmidt's employment (*see* Krentzman Decl., Ex. B (Arbitration Agreement), § 2), and therefore are subject to mandatory arbitration. As Defendants established in the Opening Brief, it is of no legal significance that the claims include allegations that extend from the employment period through

---

[2]Defendants also are troubled by the several references to "recorded calls" of Defendants' legal counsel – both internal and external – made by Plaintiffs' counsel. (*See, e.g.*, Opp'n at 4; Am. Compl. ¶¶ 64, 233.) To the extent that Plaintiffs' counsel recorded and is now purporting to disclose conversations regarding a potential early resolution of this dispute, those conversations are not admissible and should not be considered in deciding this Motion. (*See* Fed. R. Evid. 408.)
[3]Von der Schmidt's contention that this Court has "the sole jurisdiction to distinguish between employment related matters and distinct cause of actions" is rebutted by the express term of the Arbitration Agreement. (*See* Krentzman Decl., Ex. B (Arbitration Agreement), § 4 ("Any issue concerning arbitrability of a particular issue or claim pursuant to this Arbitration Agreement (except for issues concerning the validity or enforceability of the class action, collective action, or representative action Waivers) must be resolved by the arbitrator, not the court.").) However, there is no genuine issue with regard to whether von der Schmidt's remaining claims are arbitrable, and the Court should compel those claims to arbitration.

and after von der Schmidt's termination.  (*See* Opening Br. at 13-14.)  Von der Schmidt presents the Court with no authority suggesting otherwise.

Accordingly, the Court should compel von der Schmidt to arbitrate the two remaining claims he asserts against Morgan Stanley in this Action.

## II. PLAINTIFFS CANNOT AMEND THEIR COMPLAINT THROUGH THEIR OPPOSITION TO DEFENDANTS' MOTION.

In their Opposition, Plaintiffs improperly seek to amend their claims for a second time by asserting new allegations in their brief and declarations and through an "expert report" attached to the "declaration" of someone named Ty Ngô.  (*See* von der Schmidt Declaration; Declaration of Keanna Ngô ("K. Ngô Declaration"; Dkt. No. 32); and Declaration of Ty Ngô ("T. Ngô Declaration"; Dkt. Nos. 30-1 and 30-2).)  Plaintiffs' efforts are contrary to long-standing and well-established authority holding that a plaintiff cannot amend pleadings through an opposition to a motion to dismiss.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (holding that pleadings cannot be amended through statements in briefs or motion papers); *Doyle v. U.S. Dep't of Homeland Sec.*, 331 F. Supp. 3d 27, 64 (S.D.N.Y. 2018), *aff'd*, 959 F.3d 72 (2d Cir. 2020) (holding that "plaintiffs [cannot] inject [new evidence] into their pleading by way of their opposition brief, as this would constitute an improper amendment of their complaint"); *see also Baldwin v. United States*, No. 20-214, 2021 WL 431145, at *2 n.5 (N.D.N.Y. Feb. 8, 2021) (holding that facts and legal arguments submitted in an attorney affidavit and "medical expert declaration" are "not properly submitted on a motion to dismiss").

Courts also routinely decline to consider expert declarations at the pleading stage.  *See, e.g.*, *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 224 (S.D.N.Y. 2018) ("[E]videntiary uncertainty is a primary reason why courts have refused to consider such submissions at the pleadings stage."); *see also Fin Acquisition Partners LP v. Blackwell,* 440 F.3d

278, 285-86 (5th Cir. 2006) ("[A]llowing plaintiffs to rely on an expert's opinion in order to state securities claims requires a court to 'confront a myriad of complex evidentiary issues not generally capable of resolution at the pleading stage.'  In addition, considering such opinions might require ruling on the expert's qualifications.  This would be inappropriate at the pleading stage." (citation omitted)).  Moreover, here, Plaintiffs' "expert" has declined to provide the Court with information regarding his purported expertise, including his education, his employment history, the methodology by which he prepared the report, the fees he charged for his services, and other critical information that would allow the Court to determine whether this "expert" was qualified to render any opinion.[4]  (*See* T. Ngô Decl., at Ex. A, p. 1 ("Specific references to my employer, proprietary assessment technologies, past and current client information or assessment results will not be disclosed.  Additionally, specific references to personally identifying information, if at all possible and to the greatest extent, will be considered out-of-scope.").)

Accordingly, in deciding Defendants' Motion, the Court should not consider the extrinsic material in Plaintiffs' or their "expert's" declarations, nor should it consider the unsupported allegations asserted for the first time in Plaintiffs' Opposition.

### III.   NGÔ'S CLAIMS FAIL AS A MATTER OF LAW AND SHOULD BE DISMISSED.

The crux of Ngô's Opposition to Defendants' Motion to Dismiss is the conclusory refrain that she has "systemically [*sic*] followed . . . the pleading standard" and is "not required to prove [her] case at the pleading stage," which she conditions with a request to amend to "correct any inequities and add additional applicable causes of actions, facts, and defendants."  (*See* Opp'n at 8, 10, 11.)  In so arguing, Ngô repeatedly misrepresents the standard of review that is applied to

---

[4]Defendants also note that the proposed "expert" has the same last name as Plaintiff Keanna Ngô.  However, Ty Ngô has not disclosed any relationship to the Plaintiffs.

her New Jersey state-law claims.[5] This Court must apply the plausibility standard set forth by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to assess the sufficiency of all of Plaintiff's claims, even those asserted under New Jersey state law. *See, e.g.*, *Bramshill Invs., LLC v. Pullen*, No. 19-18288, 2020 WL 4581827, at *5 (D.N.J. Aug. 10, 2020) (dismissing NJCROA claim for failing to plausibly plead damages); *Piscopo v. Pub. Serv. Elec. & Gas Co.*, No. 13-552, 2015 WL 3938925, at *7 (D.N.J. June 25, 2015), *aff'd*, 650 F. App'x 106 (3d Cir. 2016) (dismissing common-law intrusion upon seclusion claim based on failure to plausibly plead tortious conduct). Ngô's request to replead for a second time (or third, if the Court were to consider the allegations contained in her declaration) is a tacit concession that she has not satisfied this standard. As discussed at length in Defendants' Opening Brief and further below, Ngô fails to plead essential elements of her claims under the CFAA, the NJCROA, and for invasion of privacy under New Jersey common law.

### A. NGÔ'S CLAIMS FAIL BECAUSE SHE HAS NOT PLAUSIBLY PLEAD THAT DEFENDANTS ENGAGED IN THE ALLEGED HACKING.

A CFAA claim should be dismissed where a plaintiff "provided no facts to establish that [the defendant] or any of its employees is affiliated with the hacks of [p]laintiffs' computers." *El Omari v. Buchanan*, No. 20-2601, 2021 WL 5889341, at *13 (S.D.N.Y. Dec. 10, 2021), *aff'd*, No. 22-55-CV, 2022 WL 4454536 (2d Cir. Sept. 26, 2022) (citation omitted). Similarly, claims under the NJCROA and New Jersey privacy tort claims require a plausible pleading that the defendant engaged in the misconduct that forms the basis of the claim. *See, e.g.*, *Tiburon Lockers, Inc. v. Fletcher*, No. 15-6970, 2016 WL 4487852, at *5 (D.N.J. Aug. 24, 2016) (granting motion to dismiss NJCROA claim where plaintiff only asserted conclusory allegations that defendant

---

[5] While Ngô also purports to cite the pleading standard applied by New York courts, this standard also is inapplicable, including because Ngô does not state any New York state-law claims.

"accessed and altered" plaintiff's computer system); *Piscopo*, 2015 WL 3938925, at *7 (holding that the allegation that "[Plaintiff] believes the intrusion into Plaintiff's seclusion and personal affairs started up again after his reinstatement to PSE & G in 2010" was an "unsubstantiated allegation is equivalent to an 'upon information and belief' allegation that courts routinely reject"); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 278 (3d Cir. 2016) (observing that courts interpret NJCROA "in harmony" with the CFAA).

The narrative that Ngô asks the Court to accept as plausible is, giving it a generous reading, absurd. Ngô now alleges that, on April 13, 2022, she "witnessed strangers obtain access to and control of [her] personal devices without her consent," which allowed those "strangers" to "comb through [her] personal information and [her] private thoughts, photos, and conversations." (K. Ngô Decl. ¶ 12.) She apparently believes that this "cyberattack" is continuing to this day, and that "someone might be looking back at [her]" through the camera on one or more of her personal devices. (*Id.* ¶ 20.) The only purported evidence Plaintiffs have offered in support of their "cyber" claims is the fact that Morgan Stanley remotely "wiped" von der Schmidt's work iPhone after he sent a disturbing email to Morgan Stanley's CEO. The subject line of his email was "Zeretzung" – which apparently was a psychological warfare technique employed by the East German secret police (Stasi) – and accused Morgan Stanley of conspiring with MetLife and FINRA and engaging in a "multi-vector phishing and tunneling scheme" and "clandestine surveillance" using a "'hidden' (i.e., hastily glued to a circuit board) Bluetooth transmitter." (*See* Opp'n at 5-6; *see also* Compl. (Dkt. No. 1) ¶¶ 168-69.) Respectfully, the Court should not give credence to wild conspiracy theories.

Even if the Court were to consider the "expert report" submitted with Plaintiffs' Opposition (which it should not due), this "report" it is rife with the same conjecture as Plaintiffs' Amended

Complaint and declarations. (*See* T. Ngô Decl., Ex. A.) Offering no credentials, Ty Ngô in the "report" speculates about how a "hacker" "can," "may" or "might" engage in a "cyberattack," but critically does not conclude (let alone explain) that any of the Defendants in this case actually did "hack" either of the Plaintiffs. (*See, generally id.*)

Courts routinely dismiss CFAA claims for failure to plausibly allege that a defendant engaged in the alleged hacking, including, notably, where the plaintiffs have made far more specific allegations than what Ngô asserts here. *See, e.g.*, *Omari v. Ras Al Khaimah Free Trade Zone Auth.*, No. 16-3895, 2017 WL 3896399, at *11 (S.D.N.Y. Aug. 18, 2017), *aff'd sub nom. El Omari v. Kreab (USA) Inc.*, 735 F. App'x 30 (2d Cir. 2018), *cert. denied sub nom. El Omari v. Ras Al Khaimah Free Trade Zone Auth.*, 139 S. Ct. 1170 (2019) ("Counts VII and VIII, based on the CFAA, fail because plaintiff does not allege sufficient factual matter to permit a 'reasonable inference,' that [defendant]—as opposed to someone else—was involved in the hacking of plaintiff's website." (citations omitted)); *Broidy v. Glob. Risk Advisors LLC*, No. 19-11861, 2021 WL 1225949, at *8 (S.D.N.Y. Mar. 31, 2021) ("Plaintiffs' Amended Complaint fails for the simple reason that it never plausibly connects the hacking activity to GRA or its agents."); *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 526 (S.D.N.Y. 2013) ("Plaintiff's pleadings are repeatedly couched in terms of sheer possibility, otherwise known as conjecture. . . . Such conjecture is not enough to state a claim."); *see also Sync Labs LLC v. Fusion Mfg.*, No. 11-3671, 2016 WL 2901665, at *7 (D.N.J. May 18, 2016) (denying leave to amend to add NJCROA claim where allegations in proposed amended complaint "allow the Court to infer only the 'mere possibility of misconduct'" (citing *Iqbal*, 556 U.S. at 678-79)); *Mu Sigma, Inc. v. Affine, Inc.*, No. 12-1323, 2013 WL 3772724, at *10 (D.N.J. July 17, 2013) (finding that plaintiff's "bare allegation" that defendants "intentionally accessed [plaintiff's] protected computer without authorization" was

"entirely conclusory and unsupported by any facts," including because the plaintiff "does not specify how or whether Defendants allegedly stole its data or what in particular was stolen, much less alleged that Defendants did so with purpose or knowledge").

For example, in *Omari v. Ras Al Khaimah Free Trade Zone Authority*, the plaintiff alleged that he had been terminated as CEO over the trade authority controlling part of the United Arab Emirates after he objected to a report that he believed contained factual errors and criticized the sheik who ruled over the trade region. *See Omari*, 2017 WL 3896399, at *1-5. The court found that plaintiff's CFAA claim relied on an inference that, because the plaintiff had criticized his former employer, the defendant "may have had beef with him" and, therefore, was motivated to hack his computer. *Id.* at *11. The court concluded that "[t]his inference is speculative and implausible given the well-known frequency of hacking, including by strangers, and the many hackers out there." *Id.* The Second Circuit affirmed the district court on all grounds, and the Supreme Court declined to take certiorari over the case. *See* 735 F. App'x 30, *cert. denied*, 139 S. Ct. 1170.

In *Broidy*, in support of their CFAA claim, the plaintiffs and their forensic expert identified multiple IP addresses associated with the alleged hacking, traced the IP address to specific geographic locations, and made allegations connecting the defendant to those locations. *See Broidy*, 2021 WL 1225949, at *8. The court found that the allegations were "wholly speculative" and did not establish that it was plausible that the defendant and/or its employees "(as opposed to any other firm or person) actually executed the spear phishing campaign and theft of personal information from Plaintiffs." *Id.* at *9. The court also stated that the plaintiffs' allegations regarding defendant's capability to perform such an attack – based on the defendant's "skill set" and its "'special projects' division" – "**point[s] only to the 'feasibility' of the attack**," which the

court found was "**legally insufficient to state a claim**." *Id.* (emphasis added). The court further found that the fact that plaintiffs had the ability to identify the several IP addresses that were traceable to the hacks, but were unable to connect those IP addresses to the defendant, "makes it less plausible that [the defendant] had a role in the hacking attacks." *Id.*

In *JBCHoldings NY, LLC*, the plaintiffs alleged the following in support of their CFAA claim:

> [P]laintiffs allege that someone, currently believed to be Janou [a former employee of the plaintiff], or one of her agents, placed a flash memory drive on JBC and JP computer servers in an effort to surreptitiously rip information from the drives . . . . Plaintiffs' technology personnel found spyware and malware on Plaintiffs' servers. They believe the spyware to have been possibly remotely placed. Further, they believe it possible that information was taken remotely by Janou and Puglia [another former employee]. Indeed, according to IT personnel, Janou could have passed along her login-information to Puglia, in excess of her authorized use, which would explain the placement, remotely of spyware or the remote removal of Plaintiffs' data.

931 F. Supp. 2d at 525-26. The Court held that these allegations "are precisely the sort of speculative, 'naked assertion[s]' that do not suffice to survive a motion to dismiss." *Id.* at 526. (citation omitted). In so holding, the Court found that "the reasonable inference that the Court draws, drawing upon 'judicial experience and common sense,' is that these speculative actions have been alleged for the sole purpose of salvaging a cause of action under the CFAA[.]" *Id.* (citation omitted).

In the Opposition, Ngô provides no specific defense of her claims, but instead refers vaguely to "Pages 29 to 40 and attachments 1 to 22" (presumably in the Amended Complaint) and asks the Court to conclude that she has done the bare minimum required to plead those claims. (*See* Opp'n at 12, 13, 15.) But, as was the case for the plaintiff in *Omari*, Ngô's claims rely exclusively on a theory that Defendants had a motivation to retaliate against von der Schmidt because of allegations he made about Defendants during his employment. Like the plaintiff in

*Broidy*, Ngô has, at best, argued that Morgan Stanley (but not the individual defendants) has the capacity to access von der Schmidt's work-issued iPhone, but Ngô fails to proffer any plausible allegation that would connect this capacity to the alleged hack of her personal devices (a failure made all the more stark by her "expert's" omission of any fact connecting Defendants with the alleged suspicious activity they claim to have observed). Indeed, Plaintiff Ngô's claims and Ty Ngô's "analysis" are similar to the speculative conclusions that the court in *JPCHoldings* found did not meet the plausibility standard set forth in *Iqbal*.

We respectfully submit that the Court should reach the same conclusion as the courts in *Omari*, *Broidy*, and *JPCHoldings* (and the multitude of other courts that have done the same) and dismiss Ngô's claims for failing to plausibly allege that any of the Defendants were involved in the alleged hacking.

### B. NGÔ'S CLAIMS ALSO FAIL BECAUSE SHE HAS NOT PLAUSIBLY PLEAD THAT SHE SUFFERED COGNIZABLE DAMAGES.

As stated in Defendants' Opening Brief, Supreme Court precedent establishes that "damage" and "loss" under the CFAA are to be interpreted narrowly, "focus[ing] on technological harms—such as the corruption of files—of the type unauthorized users cause to computer systems and data." *Van Buren v. United States*, 141 S. Ct. 1648, 1660 (2021). Similarly, under the NJCROA, particular damages must be sustained as a result of the alleged offensive conduct. *See, e.g.*, *Bramshill Invs.*, 2020 WL 4581827, at *4 ("Pursuant to its plain language, the NJCROA 'requires a showing that a person or enterprise was damaged in business or property.'" (citation omitted)); *Spencer Sav. Bank SLA v. McGrover*, No. A-1899-13T3, 2015 WL 966151, at *7 (N.J. Super. Ct. App. Div. Mar. 5, 2015) ("The statute requires proof that a plaintiff was damaged in business or property **as a result of the proscribed conduct**." (emphasis added)).

-11-

In her Opposition, to the extent Plaintiff Ngô makes an argument regarding damages at all, she relies almost exclusively on unspecified business losses. (Opp'n at 12.) These vague allegations of loss, asserted improperly in the Opposition rather than the Amended Complaint, do not satisfy the requirement that Ngô plausibly pled that she individually suffered damages in excess of $5,000 in a one-year period, as required under the CFAA, or that Defendants' actions directed at Ngô were the cause of those losses, as required under the NJCROA. *See, e.g.*, *Bose v. Interclick, Inc.*, No. 10-9183, 2011 WL 4343517, at *4 (S.D.N.Y. Aug. 17, 2011) (holding that plaintiff failed to quantify damages under the statute where she only alleged defendant's actions "impaired the functioning and diminished the value of [plaintiff's] computer in a general fashion, but fail[ed] to make any specific allegation as to the cost of repairing or investigating the alleged damage to her computer"); *Fink v. Time Warner Cable*, No. 08-9628, 2009 WL 2207920, at *4 (S.D.N.Y. July 23, 2009) (holding that plaintiff's allegations that "Defendant causes damage by impairing the integrity or availability of data and information, as well as certain communications and protocols . . . merely parrots the statutory language and is thus insufficiently factual to frame plausibly the damages element of Plaintiff's CFAA claim"). As Defendants established in their Opening Brief, this is an independent ground upon which to dismiss Ngô's CFAA and NJCROA claims.

## IV.   THE COURT SHOULD NOT PERMIT PLAINTIFFS LEAVE TO FURTHER AMEND THEIR COMPLAINT.

Although Plaintiffs have made no formal motion to amend their complaint for a second time (or third time, if the Court considers the new allegations in the Opposition and the declarations), they make several references throughout their Opposition to a second leave to amend if the Court grants dismissal. (*See* Opp'n at 8, 10, 11, 14, 15, and 18-19.) The Court should not indulge Plaintiffs' "wait-and-see" strategy of serially amending their pleading each time

-12-

Defendants identify the deficiencies in their operative complaint.[6] Plaintiffs have not provided the Court with the proposed amended pleading, nor have they explained in their Opposition what factual allegations they would add or why they did not include them in the Complaint or in their Amended Complaint. Plaintiffs also fail to explain why new allegations would cure the Amended Complaint's fundamental flaws. Instead, Plaintiffs seem to suggest that they would include facts they knew when they filed their complaint and their first amended complaint and do not state what additional facts they would include. Courts routinely deny leave where, as here, the proposed amendment is based on previously known alleged facts. *See, e.g.*, *Cummins, Inc. v. N.Y. Life Ins.*, No. 10-9252, 2012 WL 3870308, at *3 (S.D.N.Y. Sept. 6, 2012) (holding that "the court may deny leave to amend where the party seeking it knew or should have known the facts sought to be added to the complaint"); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 737 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014) (denying leave to amend to add new claims where there was no evidence showing that the new claims "turn[] on any facts that were not available to [plaintiff] when [they] commenced [the] action"); *Ruotolo v. City of N.Y.*, No. 03-5045, 2006 WL 2372236, at *2 (S.D.N.Y. Aug. 16, 2006), *aff'd*, 514 F.3d 184 (2d Cir. 2008) (finding that "[a] court may deny a motion to amend when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed, particularly when the movant offers no excuse for the delay") (citation omitted). Respectfully, this Court should do the same.

---

[6]Plaintiffs have already used this tactic. In their original complaint, they brought claims of invasion of privacy under New York law and violations of the Electronic Communications Privacy Act of 1986 ("ECPA") that they withdrew upon learning that New York does not allow such a claim and realized that they misrepresented the standard under the ECPA. (*See* Compl. ¶¶ 212-19 and 253-63.)

## V. ANY REMAINING CLAIMS SHOULD BE STAYED DURING THE PENDENCY OF VON DER SCHMIDT'S ARBITRATION.

While Defendants maintain that their motion is wholly dispositive of Ngô's claims and properly assert that von der Schmidt's remaining claims must be compelled to arbitration, such that a stay would be rendered moot, should this Court find that any of Plaintiffs' claims survive this motion, those claims should be stayed while von der Schmidt arbitrates his other claims, which are based upon the same underlying allegations. While, in the Opposition, Plaintiffs contend that staying von der Schmidt's remaining claims (should they not be compelled to arbitration) would be prejudicial, Plaintiffs do not explain how they would be prejudiced. (Opp'n at 16-17.) Plaintiffs instead absurdly argue that von der Schmidt's dismissed claims (which he presumably intends to arbitrate) have no factual overlap with his remaining NJCROA and privacy tort claims. Von der Schmidt himself has alleged that Morgan Stanley only retaliated against him in a manner that violates these statutes based upon his actions during his employment with the Company. As such, should von der Schmidt's claims remain after this motion, they should be stayed pending arbitration. *See Alemac Ins. Serv, Inc. v. Risk Transfer, Inc.*, No. 03-1162, 2003 WL 22024070, at *3 (S.D.N.Y. Aug. 28, 2003) ("Section 3 of the FAA provides that courts must stay any suit or proceeding until arbitration has been completed if the action concerns 'any issue referable to arbitration' under a written agreement for such arbitration[.]") (citations omitted).

As discussed above, Plaintiff Ngô's claims also are based upon the same theory that Morgan Stanley targeted Plaintiffs based on von der Schmidt's employment. Due to the fact that the underlying allegations supporting both Plaintiffs' claims are identical, this Court should stay any remaining claims while von der Schmidt arbitrates his claims. *See Donjon Marine Co., Inc. v. Water Quality Ins. Syndicate*, 523 F. App'x 738, 740 (2d Cir. 2013) ("Under its inherent power to manage its docket, a district court can stay a case pending arbitration when the arbitration may

-14-

determine issues involved in the case, even when the parties to the stayed action are not the parties involved in the arbitration."); *Danisco A/S v. Novo Nordisk A/S*, No. 01- 10557, 2003 WL 282391, at *4 (S.D.N.Y. Feb. 10, 2003) (explaining that just because the plaintiff "is not a party to the arbitration agreement does not render inappropriate a complete stay of proceedings in the instant action").

Thus, a stay is proper should any of Plaintiffs' claims survive this motion.

## CONCLUSION

For all of the foregoing reasons, and for those stated in Defendants' Opening Brief, the Court should compel all of von der Schmidt's remaining claims to arbitration, stay this Action as it relates to von der Schmidt during the pendency of his arbitration, and dismiss Ngô's claims in their entirety, with prejudice, together with such other and further relief as this Court deems appropriate.

Dated: New York, New York
       April 5, 2023

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: */s/ Michael F. Fleming*
    Ira G. Rosenstein
    Michael F. Fleming
    Gregory B. Nelson
    101 Park Avenue
    New York, New York  10178
    Tel: (212) 309-6000
    Fax: (212) 309-6001
    ira.rosenstein@morganlewis.com
    michael.fleming@morganlewis.com
    gregory.nelson@morganlewis.com

*Attorneys for Defendants*